**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CAVIN MADISON,

       Petitioner,

                                     CASE NO. 2:09-CV-10770

v.                                 HONORABLE VICTORIA A. ROBERTS
                                   UNITED STATES DISTRICT JUDGE

KEITH KOGER and WILLIAM PIGOTT,
SUPERVISORS,

       Respondent.

_____/


**OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DENYING CERTIFICATE OF APPEALABILITY**

       Cavin Madison, ("Petitioner"), is on parole from his Saginaw Circuit Court jury trial conviction of two counts of delivery of less than 50 grams of cocaine, MICH. COMP. LAWS 333,7401(2)(A)(4), possession of a firearm by a felon, MICH. COMP. LAWS 750.224f, and commission of a felony with a firearm. MICH. COMP. LAWS 750.227b.[1] He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, his writ application is **DENIED.**

## I. Background

       On February 18, 2006, during a controlled-buy operation, Petitioner sold a small amount of cocaine to Melvin Wells. Petitioner was arrested immediately and was found to be in possession

---

[1]

When Petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Standish Maximum Correctional Facility, but he has since been placed on parole and is being supervised at the Saginaw County Parole Office. The only proper respondent in a habeas case is Petitioner's custodian, which in this case would be the supervisors of the office administering Petitioner's term of parole. Rule 2(a), 28 U.S.C. § 2254. Therefore, the Court substitutes Supervisors Keith Koger and William Pigott in the caption.

of more cocaine, and a firearm was found under the seat of his vehicle. Petitioner admitted to selling the cocaine to Wells, but he claimed that he did not intend to sell the additional cocaine he possessed and did not know of the firearm found in his vehicle.

At trial, Wells testified that he was a private citizen who worked with the Saginaw Police Department to buy drugs. On the day in question, he and a police officer drove around town looking to buy crack cocaine. Wells was driving a van, and police officers Fong and Skabardis were hidden in the back of the vehicle.

Wells spotted Petitioner sitting in a vehicle with a woman. He asked Petitioner if he "had anything." Petitioner told him to drive around the block. Wells drove around the block, met Petitioner again, and told him that he wanted thirty-dollars of "stuff." Petitioner took the money and gave the witness two pieces of crack cocaine in a piece of brown paper. Petitioiner also gave him a piece of paper with a phone number on it.

Wells said "'this is good,'" which was the signal he and police had agreed upon, and the police got out and arrested Petitioner. Wells saw them tackle Petitioner. He then saw about six pieces of crack and some money on the ground nearby. He also saw police take a weapon from Petitioner's vehicle.

Officer Albert Fong testified that he was riding in the back of the van with Wells when he heard Wells say the key phrase, "this looks good." Wells and his partner got out of the van and identified themselves as police officers. Petitioner was standing at the driver's door of the van, holding money in his right hand. Fong saw Petitioner throw some small objects to the ground with his left hand and later found four "rocks" of crack on the ground. Wells later gave him the crack cocaine he purchased from Petitioner along with a piece of paper with a phone number and the name

2

"Doughboy" on it.  Fong called the number, and a cell phone in Petitioner's vehicle rang.

Fong testified that he seized $227 in cash from Petitioner, not including the marked bills Wells used to purchase the cocaine.  Fong opined that Petitioner's possession of the additional four rocks of crack along with the other circumstances of the case indicated that the additional cocaine was for sale.  Fong saw a weapon partially under the driver's seat of Petitioner's vehicle.  Officer Erik Skabardis, Fong's partner, testified to essentially the same account of the controlled-buy operation.

Detective Traci Pike testified that she was in a marked car not visible from the scene that day. When she arrived at the scene, Petitioner was handcuffed.  She searched the woman who was sitting in Petitioner's vehicle, and put her in a marked car.  She then searched Petitioner's vehicle and found a gun partially hidden under the driver' s seat.  The gun was visible when the vehicle's door was open. Petitioner's companion told Pike that the gun belonged to her.

Tanisha Rucker testified that she was with Petitioner in his vehicle when the incident occurred.  Just before the police arrived, he handed her a gun and she placed it under the seat.  She told the officer that the gun was hers because she loved Petitioner and wanted to help him.

Paul Bar, an Michigan State Police drug analyst, testified that he tested the materials received from the police, and they contained cocaine.

Petitioner testified in his own defense.  He testified that he sold cocaine to Wells, but he claimed that he did not have a gun and did not know there was one in the vehicle.  When the police arrested him, he dropped some money and several rocks of crack.  He testified that he had kept the crack for his own use.

Based on this evidence, Petitioner was convicted as charged.  Petitioner then filed an

3

application for leave to appeal with the Michigan Court of Appeals, raising the following claim:

>   I.   The trial court reversibly erred by overruling defendant's objection to the introduction of evidence that defendant's sale of cocaine was made in an area of Saginaw that was then controlled by the Sunny Side street gang.  This error led to the jury's conviction on gun charges based on the implication that a weapon was necessary in this part of Saginaw due to street gang presence.

The Michigan Court of Appeals denied the application for "lack of merit in the grounds presented." *People v. Madison*, No. 278590 (Mich. Ct. App. October 30, 2007).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claim.  The Michigan Supreme Court denied Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  *People v. Madison*, 480 Mich. 1077; 744 N.W.2d 174 (2008).

Petitioner now raises the same claim in his petition for a writ of habeas corpus.


## II.  <u>Standard of Review</u>

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, No. 2011 WL 148587, * 11 (U.S. 2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*.  "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. 770.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims previously rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5  (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## III.  Discussion

Petitioner argues that the trial court abused its discretion by allowing the admission into evidence of testimony that the controlled-buy occurred in an area of Saginaw controlled by a street gang.  Respondent asserts that Petitioner's claim alleges an error of state evidentiary law and is therefore not cognizable.

Generally, "'[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.'" *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005), *quoting Roe v. Baker*, 316 F.3d 557, 567 (6th Cir.2002).  The Supreme Court stated that "[i]n the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism

6

for relief." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991).  The term "unfair prejudice," as to a

criminal defendant, refers to the capacity of some relevant evidence to lure the factfinder into

declaring guilt on a ground different from proof specific to the offense charged. *Old Chief v. United*

*States*, 519 U.S. 172, 180 (1977).

Prior to the start of trial, Petitioner moved to exclude any evidence introduced to show that

Petitioner was a member of a gang.  The trial court sustained the objection, but it stated that if

Petitioner opened the door to such evidence that the issue would be revisited.

At trial, and over defense objection, Officer Fong testified that the controlled-buy occurred

in an area of town controlled by the Sunny Side gang:

> [Prosecutor]: All right, What location was that in the City of Saginaw?

> [Fong]: I was on Russell Street, just north of Youmans Street.

> [Prosecutor]: Where is that actually located physically inside of the city?

> [Fong]: Southeast part of the city.

> [Prosecution]: All right.  And was that an area that you were kind of targeting that particular day?

> [Fong]: Yes.  That area is familiar with us.  It's controlled by the street gang called Sunny Side.

> [Defense Counsel]: Objection to any reference to gangs unless there is a foundation laid.

> [The Court]: I'll overrule it.  I'll allow the question.

Trial Tr. at 45-46.

No further mention of street gangs was made at trial.

The isolated testimony that the controlled buy took place in an area controlled by a street

gang did not render Petitioner's trial fundamentally unfair.  It is true that there exists potential hazard

7

in allowing a prosecutor to present more evidence than necessary to establish a particular fact when the additional evidence encourages the jury to decide the case on an improper basis. *See, e.g., United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999) (photographs of threatening language in gang graffiti excluded where graffiti could not be linked to defendants directly). Evidence of gang affiliation can be such an example, and it is generally inadmissible if there is no connection between the gang evidence and the charged offense, *United States v. Hendrix*, No. 94-1404, 1995 U.S. App. LEXIS 8676, 1995 WL 218472, at *3 (6th Cir. Apr. 12, 1995). The Supreme Court has held that evidence of gang-related activity can amount to constitutional error when the evidence is not relevant to any issue being decided in the proceeding and infringes on a specific constitutional right. *Dawson v. Delaware*, 503 U.S. 159, 160 (1992).

Here, however, there was no implication that Petitioner was a member of the Sunny Side street gang. Rather, the testimony related to the reason that the police chose a specific area of Saginaw to conduct the controlled-buy operation. Petitioner contends that the jury might have nevertheless improperly inferred that the weapon found in his vehicle belonged to him by assuming that drug-dealers are more likely to be armed when dealing drugs in gang-controlled areas. That argument was never made to the jury, however, and the inference would not be an obvious one for the jury to draw on its own.

In any event, even assuming that the jury made this attenuated inference, it would have had no impact on the outcome of the trial. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445(1995) (habeas court should grant petition

8

if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon jury's verdict).  Harmless error analysis applies to claims involving the improper admission of evidence, *see, e.g., Chambers v. Maroney*, 399 U.S. 42, 52-53 (1970), as well as claims of prosecutorial misconduct. *See Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003).

The evidence presented against Petitioner was quite strong.  He was caught red-handed selling crack cocaine to a police informant in a controlled-buy operation.  He discarded additional rocks of cocaine when police officers moved to arrest him, and the fact that he gave the informant his cell-phone number convincingly showed that he was open to sell additional cocaine to the informant.  Petitioner was seen exiting his vehicle before the sale, and a handgun was found under the driver's seat.  Although his girlfriend initially told police that the weapon belonged to her, at trial she admitted that it belonged to Petitioner.  In light of this weighty evidence of Petitioner guilt, the passing and isolated reference to the Sunny Side gang did not have a substantial and injurious effect upon the jury's verdict.  Accordingly, Petitioner has not demonstrated entitlement to habeas relief.

## IV.  Conclusion

The Court denies the petition for writ of habeas corpus.

The Court also denies a certificate of appealability to Petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that

9

reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.   A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

The Court denies Petitioner a Certificate of Appealability because he failed to make a substantial showing of the denial of a federal constitutional right.   Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable, or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

## V.   ORDER

The Petition for Writ of Habeas Corpus is **DENIED.**

Also, a Certificate of Appealability is **DENIED.**

**ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  June 13, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record and Cavin Madison by electronic means or U.S. Mail on June 13, 2011.

s/Carol A. Pinegar
Deputy Clerk

10